UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELANORE HAWKE

                                Plaintiff,                    8:25-cv-00441 (BKS/DJS)

v.

ADK AQUATICS LLC a/k/a ADIRONDACK WATER
SPORTS a/k/a LAKE PLACID WATER SPORTS, and
WESLEY CANNY

                                Defendants.
_____

**Appearances:**

*For Plaintiff*:
Jordan Merson
Kevin Deng
Nathan Werksman
Merson Law, PLLC
950 Third Avenue, 18th Floor
New York, NY 10022

*For Defendants*:
James E. Mercante
Richard Gonzalez
Gallo Vitucci Klar LLP
90 Broad Street, 12th Floor
New York, NY 10004

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Elanore Hawke brings this diversity action against ADK Aquatics LLC a/k/a Adirondack Water Sports a/k/a Lake Placid Water Sports and its alleged owner, Wesley Canny, alleging negligence and negligent hiring, supervision, and retention arising out of an injury

Plaintiff suffered while water-skiing using equipment provided by and a boat operated by Defendants.[1] (Dkt. No. 1). Defendants move to dismiss the complaint and compel arbitration. (Dkt. No. 12). The motion has been fully briefed. (Dkt. Nos. 13, 16, 18). For the reasons stated below, Defendants' motion is denied without prejudice because the briefing is not sufficient for the Court to rule on the motion.

## II.     FACTS

In support of their motion, Defendants have submitted an affidavit from defense counsel attaching as an exhibit, a "Release of Liability, Assumption of Risk, Waiver of Claims, Indemnification & Binding Arbitration Agreement." (Dkt. No. 12-1, at 2; Dkt. No. 12-3, at 2–3). The Agreement, which is dated August 7, 2024, provides, in part:

> The Participant [identified as a signatory to the agreement] . . . hereby agrees to submit any dispute, claim, or controversy, relating to and/or arising from (a) this . . . Binding Arbitration Agreement, (b) Participant's participation in the Activities, and/or (3) [*sic*] any other interaction between the Participant and the Host [identified as ADK Aquatics LLC], including the determination of the scope or applicability of this agreement to arbitrate, to binding arbitration."

(Dkt. No. 12-3, at 3; Dkt. No. 13-2, at 3). Defendants have not provided any affidavits concerning the execution of this agreement.

In opposition to the motion, Plaintiff has submitted unsworn declarations from herself and her husband describing their water sports excursion on August 7, 2024, using Defendant ADK Aquatics's services. (Dkt. No. 16-3; Dkt. No. 16-4).[2] Two of Defendant's employees took

---

[1] Initially, the parties did not agree on the basis for subject-matter jurisdiction. Plaintiff's complaint asserted that the Court had diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1, ¶ 5). Defendants, on the other hand, alleged that the Court had admiralty jurisdiction under 28 U.S.C. § 1333. (Dkt. No. 13, at 4–5). The Court issued a text order notifying the parties that Plaintiff did not adequately allege diversity jurisdiction and Defendants did not sufficiently allege admiralty jurisdiction. (Dkt. No. 20). The parties submitted a joint status report agreeing that this Court has diversity jurisdiction over Plaintiff's lawsuit under 28 U.S.C. § 1332. (Dkt. No. 21). The Court finds that the allegations in the complaint and joint status report are sufficient to establish this Court's diversity jurisdiction.

[2] Although the Court may not consider the facts in these unsworn declarations for the purposes of this motion, *see* Section IV.A, *infra*, the Court has provided a summary of the facts in the declarations for context.

Plaintiff and her family out on a boat. (Dkt. No. 16-3, ¶ 4). On Plaintiff's turn to waterski, Defendant's employee helped her into the ski and tightened the binding on her foot. (*Id.* at ¶ 6). Plaintiff commented about the tightness of the binding, and Defendant's employee replied that it was "more of a competitive binding" and "meant to keep the user locked in." (*Id.*).

During her waterskiing run, Plaintiff tried to cross the wake, but "suddenly tripped going into [her] next turn." (*Id.* at ¶ 8). Her "foot and ankle slapped the water hard and the pain knocked the wind out of [her] making it hard for [her] to talk." (*Id.*). After feeling a "sharp pain" in her foot, Plaintiff ended her turn. (*Id.* at ¶ 9). While waiting for the boat to return for her, she could not release the ski's binding. (*Id.*). Plaintiff needed help getting back onto the boat because of the "extreme pain" she was experiencing. (*Id.* at ¶¶ 9–10). Plaintiff noticed that her foot and ankle had "swollen significantly, with blue bruising forming under the bottom of [her] foot and inside [her] ankle bone." (*Id.* at ¶ 12).

Plaintiff did not want her children to worry, so she encouraged her daughter to go on another wake surfing run. (*Id.* at ¶ 14). During her daughter's turn, Plaintiff's pain was "so severe that [her] teeth were chattering" and she "began shivering and shaking all over." (*Id.* at ¶ 15). Plaintiff suspected that her foot was broken and told her husband. (*Id.*). Her husband told Defendant's employees that they were done and wanted to go back to the dock. (Dkt. No. 16-4, ¶ 16).

Before Plaintiff and her family left the boat, Defendant's employee asked Plaintiff's husband to pay for the excursion. (*Id.* at ¶ 18). Defendant's employee approached Plaintiff and her husband and made a statement to the effect of, "I am really concerned I did not get you to sign the form. Please sign it or my boss is going to kill me," (Dkt. No. 16-3, ¶ 21), or "Guys, I'm really concerned that I didn't get you to sign the waiver. The one time I don't get someone to

sign a waiver and someone gets hurt. If you could please sign it or my boss is going to kill me," (Dkt. No. 16-4, ¶ 21). Before then, neither Plaintiff nor her husband had signed any waivers or agreements with Defendant ADK Aquatics. (Dkt. No. 16-3, ¶ 3; Dkt. No. 16-4, ¶ 3).

Plaintiff stated that "[a]t that point, my pain was blinding, and I couldn't think straight. I was in shock, was experiencing 10/10 pain in my leg, and my entire body had started shaking from the pain. In that moment, I was eager to do whatever we needed to get to a hospital." (Dkt. No. 16-3, ¶ 22). Plaintiff claims that she signed the form containing the arbitration agreement because "it felt like [they] had no choice, and [she] just had to get out of that situation to seek medical attention." (*Id.* at ¶ 23). She said that "no one explained to [her] what was in the form." (*Id.*). She did not read the form because, "[she] was not of clear mind and was in a state of traumatic shock, anxiety, and experiencing extreme pain, and felt [she] needed to sign them to leave Lake Placid Water Sports to get to a hospital." (*Id.* at ¶ 24). After Plaintiff and her husband signed the form (Dkt. No. 16-3, ¶ 23; Dkt. No. 16-4, ¶ 23)*,* Plaintiff and her family drove to a hospital. (Dkt. No. 16-3, ¶ 26).

### III.   LAW GOVERNING ARBITRATION AGREEMENTS

"When a movant manifests an intent to compel arbitration," like here, "district courts have 'treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration.'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 100 n.3 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). Because Defendants have explicitly asked the Court to order arbitration, the Court treats Defendants' motion as a motion to compel arbitration. *See Nicosia*, 834 F.3d at 230.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

4

law or in equity for the revocation of any contract . . ." 9 U.S.C. § 2. The FAA thus reflects a "federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and puts them "upon the same footing as other contracts." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). To that end, the FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Because the FAA "does not require parties to arbitrate when they have not agreed to do so," *Schnabel*, 697 F.3d at 111 (quoting *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)), the first question on a motion to compel arbitration is "whether such agreement exists between the parties," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citing *Schnabel*, 697 F.3d at 118); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022), under the applicable state's contract law, *Zachman*, 49 F.4th at 101 (citing *Schnabel*, 697 F.3d at 119). This question is for the Court to decide because "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *See Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd of Teamsters*, 561 U.S. 287, 299–301 (2010); *see also Schnabel*, 697 F.3d at 118 ("Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator." (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)).

If the Court is satisfied that the parties formed an arbitration agreement, it may also resolve other threshold questions of arbitrability unless the parties clearly and unmistakably provide otherwise. *See Nicosia*, 834 F.3d at 229 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (alteration in original)). "'Questions of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (alternation in original) (quoting *Howsam*, 537 U.S. at 84; *see also Granite Rock*, 561 U.S. at 300 ("[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) *its enforceability or applicability to the dispute is in issue.*" (first emphasis in original) (second emphasis added)).

Challenges to the enforceability of an arbitration agreement encompass "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC*, 563 U.S. at 339. Like challenges to an arbitration agreement's formation, challenges to the agreement's enforceability are governed by the applicable state's contract law. *See Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316, 327 (S.D.N.Y. 2025). But unlike formation challenges, *see Granite Rock Co.*, 561 U.S. at 296–97, enforceability challenges must be made specifically to the arbitration agreement in order for the Court to hear them. *Melendez*, 789 F. Supp. 3d at 327 ("[T]he Court must be assured that challenges to the arbitration provision . . . are

6

to that provision specifically, rather than to the parties' entire agreement." (citing *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025)); *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 445–46 ("[A]n arbitration provision is severable from the remainder of the contract . . . [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Even where the alleged basis for the contract's invalidity applies equally to the arbitration agreement, "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-a-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

## IV.   STANDARD OF REVIEW

On a motion to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This standard requires the Court to consider "all relevant, admissible evidence submitted by the parties," *Meyer*, 868 F.3d at 74, which includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A); *see also Meyer*, 868 F.3d at 74. Based on this evidence, the Court "draw[s] all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman*, 49 F.4th at 101–02. "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102. The opposing party "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352,

7

358 (2d Cir. 1995)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun*, 316 F.3d at 175).

But if the party establishes that an agreement was formed, the burden then shifts to the opposing party to show that the agreement is invalid or inapplicable. *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 370 (E.D.N.Y. 2025) (quoting *Harrison v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). If these other threshold arbitrability questions "can be decided as a matter of law based on the undisputed facts in the record, the [C]ourt 'may rule on the basis on that legal issue and "avoid the need for further court proceedings."'" *See Diaz v. Wanrong Trading Corp.*, No. 25-cv-1575, 2025 WL 3119182, at *6, 2025 U.S. Dist. LEXIS 219784, at *15 (E.D.N.Y. Nov. 7, 2025) (quoting *Wachovia Bank Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)).

V.     DISCUSSION

    A.     **Admissible Evidence**

Defendants argue that the Court should disregard the declarations submitted by Plaintiff and her husband because they are neither sworn to nor made under penalty of perjury. (Dkt. No. 18, at 3 n.1). Defendants are correct that neither declaration is sworn to or "subscribed by [the person making it] as true under penalty of perjury" pursuant to 28 U.S.C. § 1746. (*See* Dkt. No. 16-3; Dkt. No. 16-4).

"To be admissible in a summary judgment proceeding, an affidavit must be sworn to," or, alternatively, a "declaration made under penalty of perjury." *Jean v. Acme Bus Corp.*, No. CV 08-4885, 2012 WL 4171226, at *5, 2012 U.S. Dist. LEXIS 134127, at *15–16 (E.D.N.Y. Sep. 19, 2012); 28 U.S.C. § 1746. Without the subscription required by § 1746, the Court declines to consider the unsworn declarations for purposes of this motion, which is adjudicated under the standard used to evaluate motions for summary judgment. *Cunningham v. CVS Health Corp.*,

8

No. 23-cv-1328, 2024 WL 2867303, at *4, 2024 U.S. Dist. LEXIS 101160, at *11–12 (S.D.N.Y. June 4, 2024) (declining to consider the defense witness's statement in support of the defendants' motion to compel arbitration because it failed to satisfy 28 U.S.C. §1746's requirement for an unsworn declaration to be subscribed as true under penalty of perjury); *see also Waddlington v. City of New York*, 971 F. Supp. 2d 286, 292 (E.D.N.Y. 2013) ("Rule 56 of the Federal Rules of Civil Procedure permits courts to consider assertions in an unsworn declaration or statement at the summary judgment stage, but only if the declarant affirms, under penalty of perjury, that the contents of the unsworn statement are true.") (citing Fed. R. Civ. P. 56(c) and advisory committee's note); Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment (A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.").

Defendants submitted the two-page Release of Liability, Assumption of Risk, Waiver of Claims, Indemnification & Binding Arbitration Agreement, as an exhibit to defense counsel's declaration, without any declaration or affidavit from anyone involved in the execution of this document. Although the parties do appear to agree in their memoranda of law that Plaintiff signed this document, (*See* Dkt. No. 13, at 2; Dkt. No. 16, at 5), on this record, absent admissible evidence, the Court cannot resolve this motion. The Court will, however, address the parties' legal arguments regarding arbitration, in order to provide guidance if Defendants seek to renew their motion.

      **B.**    **Arbitration Agreement**

Defendants move to compel arbitration because "Plaintiff, Elanore Hawke, and her husband signed an agreement to arbitrate all potential claims in relation to a water sports excursion with Defendants." (Dkt. No. 13, at 2). Plaintiff argues that she did not agree to

arbitrate her claims against Defendants, (Dkt. No. 16, at 8–10), that the agreement "was not fairly and knowingly made," (*id.* at 10–13), and it "cannot be enforced because Plaintiff signed it while under duress," (*id.* at 13–15). Plaintiff also asserts, without any legal analysis, that given her overwhelming pain she lacked capacity and was "incapable of meaningful consent." (*Id.* at 9, 11–13). The Court first turns to the law regarding the formation of an arbitration agreement and then the law regarding enforceability.

### 1.     Formation

The first issue is whether the parties formed an arbitration agreement under state contract law.[3] *See Zachman*, 49 F.4th at 101 (citing *Schnabel*, 697 F.3d at 118–19). Plaintiff argues that the agreement was never formed. (Dkt. No. 16, at 8–10). She claims that she lacked notice of the agreement's terms because they "w[ere] neither obvious nor conspicuous, and the surrounding circumstances foreclosed any meaningful opportunity to review or reject [them]." (*Id.* at 9). According to Plaintiff, "[w]ithout actual or inquiry notice, there was no meeting of the minds" and no mutual assent. (*Id.*).

Under New York law, a binding contract requires a "meeting of the minds" and a "manifestation of mutual assent." *Melendez*, 789 F. Supp. 3d at 327 (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019). "Generally, courts look to the basic elements of the offer and acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* (quoting *Starke*, 913 F.3d at 289). The manifestation of mutual assent must be "sufficiently definite to assure that [the

---

[3] The Court applies New York law to the question of whether the parties made an arbitration agreement because all or a substantial part of the alleged events giving rise to the claims are alleged to have occurred in New York, (Dkt. No. 1, ¶ 7), the parties alleged that they entered into the arbitration agreement in New York, (*see generally id.*), and both parties cite to New York law on the issue of contract formation, (*see* Dkt No. 13; Dkt. No. 16; Dkt. No. 18). *See Kutluca*, 266 F. Supp. 3d at 700 n.13 (S.D.N.Y. 2017).

10

parties] are truly in agreement with respect to all material terms." *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 283 (E.D.N.Y. 2024) (quoting *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 199 (2d Cir. 2019). "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d. Cir. 2004) (quoting *Maffea v. Ippolito*, 668 N.Y.S.2d 653, 654 (App. Div. 1998)).

A party may agree to arbitrate when they have notice of the arbitration agreement's terms. *Starke*, 913 F.3d at 289. But failure to read an arbitration agreement is not a defense to its formation. *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 49–50 (E.D.N.Y. 2017) (collecting cases). "Where an [individual] does not have *actual* notice of certain contract terms, [s]he is nevertheless bound by such terms if [s]he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Hu v. Barclays Cap. Inc.*, No. 24-cv-7580, 2025 WL 1307700, at *2, 2025 U.S. Dist. LEXIS 86579, at *5 (S.D.N.Y. May 6, 2025) (emphasis in original) (quoting *Starke*, 913 F.3d at 289). To determine whether a person is on inquiry notice of a contract's terms, "'New York courts look to whether the term was obvious and whether it was called to the [person's] attention,' a question that 'often turns on whether the contract terms were presented to the [person] in a clear and conspicuous way.'" *Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 563 (S.D.N.Y. 2025) (quoting *Lojewski v. Grp. Solar USA, LLC*, No. 22-cv-10816, 2023 WL 5301423, at *8, 2023 U.S. Dist. LEXIS 147246, at *21 (S.D.N.Y. Aug. 17, 2023)).

Here, the agreement provides that:

> The Participant . . . hereby agrees to submit any dispute, claim, or controversy, relating to and/or arising from (a) this . . . Binding Arbitration Agreement, (b) Participant's participation in the Activities, and/or (3) [*sic*] any other interaction

11

>between the Participant and the Host, including the determination of the scope or applicability of this agreement to arbitrate, to binding arbitration.

(Dkt. No. 13-2, at 3). The entire agreement is written in bolded text, and the last sentence of the agreement begins with capitalized and underlined text, providing a "**NOTICE TO PARTICIPANT**." (*Id.*) (emphasis in original). The rest of the sentence is not capitalized, but underlined, stating, "**By signing this Agreement, you are giving up your right to commence litigation against the Host in a court of law, and you are giving up your right to a trial by jury.**" (*Id.*) (emphasis in original.). Below this statement, in text set off from the rest of the agreement, is the

 capitalized sentence: "I HAVE READ AND UNDERSTAND THIS AGREEMENT AND I AM AWARE THAT BY SIGNING THIS AGREEMENT I MAY BE WAIVING CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO SUE." (*Id.*) (emphasis in original). Directly underneath this sentence, is what appears to be Plaintiff's printed name and her signature. (Dkt. No. 13-2, at 3).

      The agreement's terms are presented in a clear and conspicuous way. The change in the type of text (*i.e.*, capitalization and underlining) called attention to the main effect of assenting to the agreement's terms: sacrificing one's right to sue in a court of law. These circumstances would appear to have put Plaintiff on inquiry notice of these terms, and her signature would appear to have manifested her agreement with them. To the extent Plaintiff asserts that "the surrounding circumstances," (Dkt. No. 16, at 9), prevented the formation of an arbitration agreement, she has failed to cite to any applicable caselaw.

### 2.  Enforceability

Next, the Court addresses the issue of enforceability.[4] Plaintiff argues that the arbitration agreement "was not fairly and knowingly made and cannot be enforced." (*Id.* at 10). However, the cases Plaintiff cites apply the "fairly and knowingly made" standard only to releases from liability. *See, e.g.*, *Haynes v. Garez*, 758 N.Y.S.2d 391, 392–393 (App. Div. 2003) (stating that "there is a requirement that a release [from liability] covering both known an unknown injuries be 'fairly and knowingly made,'" in the context of adjudicating the enforceability of a release signed after a car accident in exchange for $300); *Duch v. Giacquinto*, 222 N.Y.S.2d 101, 104 (App. Div. 1961) (affirming a jury verdict setting aside a release from liability for $300 following a car accident because "the jury could properly have found that the [release] was not fairly and knowingly made."); *Pastrana-Ortiz v. Wemple*, 235 N.Y.S.3d 803 (App. Div. 2025) (finding that the plaintiff alleged sufficient facts to invalidate a release from liability on the grounds that it was not fairly and knowingly made and that there was a mutual mistake as to the extent of the plaintiff's injuries); *Ford v. Phillips*, 994 N.Y.S.2d 688, 690 (App. Div. 2014) ("[A] release must be 'fairly and knowingly made' and thus, like any other contract may be set aside on the basis of fraud or mutual mistake."). "Challenges to the enforceability of an arbitration agreement encompass "*generally* applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC*, 563 U.S. at 339 (emphasis added). None of the caselaw Plaintiff provides indicates that the "fairly and knowingly made" standard is a generally applicable contract defense or that is has been applied to invalidate an arbitration agreement.

---

[4] To the extent Defendants argue that the issue of the arbitration agreement's enforceability is for the arbitrator, the Defendants have neither pointed to language in the arbitration agreement nor cited caselaw showing that the parties "clear[ly] and unmistakabl[y]" delegated this issue to the arbitrator. *See Howsam*, 537 U.S. at 83.

To the extent that Plaintiff argues that the alleged invalidity of the Release and Waiver of Claims; Assumption of Risk; Indemnification Agreement invalidates the arbitration agreement, that would be an issue for the arbitrator. Although a federal court may adjudicate challenges to the enforceability of the arbitration agreement itself, it is the arbitrator who hears challenges to the contract as a whole, either on a ground that effects the entirety of the agreement, or on a ground that one of its terms makes the whole contract unenforceable. *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2016 WL 4617159, at *9, 2016 U.S. Dist. LEXIS 119069, at *30 (E.D.N.Y. Sep. 2, 2016); *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 444–446. [5]

Plaintiff also argues that "the proposed arbitration agreement cannot be enforced because Plaintiff signed it while under duress." (Dkt. No. 16, at 13). The parties have not addressed whether this argument is for the arbitrator or the Court. Plaintiff's argument appears to apply to the circumstances surrounding the entire contract. (*See id.* at 14 (explaining that the duress occurred "when [Plaintiff was] presented with *the form* containing the arbitration agreement)). The Supreme Court has noted that "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase v. Suski*, 602 U.S. 143, 150–51 (2024) (citing *Rent-a-Ctr., W., Inc.*, 561 U.S. at 71). The Court, however, also noted that "a party seeking to avoid arbitration must directly challenge the arbitration . . . clause, not just the contract as a whole." *Id.* at 150–51 (2024); *see also Rent-A-Ctr., W., Inc.*, 561 U.S. at 71 ("[E]ven where . . . the alleged [basis for invalidity] that induce[s] the contract as a whole equally induce[s] the agreement arbitrate which [is] part of the contract—we nonetheless

---

[5] To the extent that Plaintiff asks the Court to invalidate only the Release and Waiver of Claims; Assumption of Risk; Indemnification Agreement, that would be an issue for the arbitrator. The arbitration agreement states that "the [arbitration] Panel shall confirm whether the Waiver and Release contained in this Agreement are enforceable under applicable law." (Dkt. No. 13-2, at 3).

require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.").

Courts have held that where arbitration agreements are included in larger agreements, claims of duress must be resolved by an arbitrator. *Mahant v. Lehman Bros.*, No. 99-cv-4421, 2000 WL 1738399, at *2, 2000 U.S. Dist. LEXIS 16966, at *5–6 (S.D.N.Y. Nov. 22, 2000) (finding that the plaintiff's duress claim must be resolved by an arbitrator because "all of plaintiff's allegations supporting her duress claim relate to the enforcement of the employment application generally—not the enforcement of the arbitration provision"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 n.11 (5th Cir. 1981) (finding that the plaintiff's duress claim must be resolved by an arbitrator because "[her] allegations that she signed the stock option agreements under circumstances of . . . duress are related to her reasons for signing the contract as a whole, but are not directly related to the signing of the arbitration clauses per se); *c.f. Eisen v. Venulum Ltd.*, 244 F. Supp.3d 324, 342 (W.D.N.Y. 2017) (declining to consider the plaintiff's claim that an investment contract's arbitration provision was procedurally unconscionable due to high pressure tactics and a threat that the plaintiff would lose his investment because the plaintiff "ha[d] not asserted facts that [went] toward the arbitration clause in particular," and that "[s]uch a showing is required by the Supreme Court," citing *Rent-a-Ctr., W., Inc.*, 561 U.S. at 71).[6]

---

[6] The Court notes that under New York law, "[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of [her] free will." *New v. M&T Bank Corp.*, No. 21-cv-1186, 2025 WL 2783011, at *9, 2025 U.S. Dist. LEXIS 193462, at *24 (W.D.N.Y. Sep. 30, 2025) (alternation in original) (quoting *Doe v. Kogut*, 759 F. App'x 77, 81 (2d Cir. 2019)). The duress "must have originated from the defendant," *Cuffee v. City of New York*, No. 15-cv-8916, 2019 WL 11779186, at *6 n.6, 2019 U.S. Dist. LEXIS 47304, at *14 n.6 (S.D.N.Y. Mar. 20, 2019) (quoting *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012), *aff'd* 604 F. App'x 64 (2d Cir. 2015)), and can take one of three forms: "duress by physical compulsion, duress by threat, or duress by undue influence." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (quoting *McIntosh v. Consol. Edison Co.*, No. 82065, 96 CIV 3624, 1999 WL 151102, at *2, 1999 U.S. Dist. LEXIS 3264, at *5 (S.D.N.Y. Mar. 16, 1999)). Proving duress by undue influence requires the plaintiff to show "(1) the existence and exertion of an influence; (2) the effective operation

15

In her memorandum of law, Plaintiff asserts that she lacked capacity and "was incapable of meaningful consent," (s*ee, e.g.*, Dkt. No. 16, at 11–13), but fails to provide any applicable caselaw or analysis. "New York law presumes 'a party's competence to enter into a contract . . . and the party asserting incapacity bears the burden of proof.'" *Roberts v. Puopolo M.D., P.C.*, No. 24-cv-8162, 2025 WL 2773007, at *4, 2025 U.S. Dist. LEXIS 189658, at *9–10 (S.D.N.Y. Sep. 25, 2025) (quoting *Er-Loom Realty, LLC v. Prelosh Realty, LLC*, 909 N.Y.S. 2d 714, 716 (App. Civ. 2010)). The party asserting incapacity must show: "(1) 'that the mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction,' and (2) that the other contracting party 'knew or should have known of his condition.'" *Id.* (quoting *Washington v. NYC Med. Prac., P.C.*, No. 18-cv-9052, 2021 WL 918753, at *6, 2021 U.S. Dist. LEXIS 44992, at *14–15 (S.D.N.Y. Mar. 10, 2021). A contract entered into by a person lacking mental capacity is voidable. *See* Restatement (Second) of Contracts § 15 (1981). The Tenth Circuit has held that the principle established by *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395 (1967)—that the issue of a contract's validity is considered by the arbitrator unless the challenge is to the arbitration agreement itself—does not extend to circumstances where a party challenges the enforceability of an entire contract

---

of such influence as to subvert the mind at the time the transaction occurred; and (3) the execution of the transaction that, but for undue influence, would not have happened." *Tantaros v. Fox News Network, LLC*, No. 25-cv-961, 2025 WL 2242897, at *6, 2025 U.S. Dist. LEXIS 153505, at *16 (S.D.N.Y. Aug. 6, 2025) (quoting *Metro. Life. Ins. Co. v. Bradway*, No. 10-cv-0254, 2011 WL 723579, at *5, 2011 U.S. Dist. LEXIS 20538, at *13–14 (S.D.N.Y. Feb. 24, 2011). "The bar for establishing undue influence is high" because "the perpetrator's behavior must amount to moral coercion sufficient to restrain independent action and destroy free agency or constrain the victim to do that which was against [her] free will and desire but which [she] was unable to refuse or too weak to resist." *Metro Life Ins. Co.*, 2011 WL 723579, at *5, 2011 U.S. Dist. LEXIS 20538, at *14 (citation modified) (citation omitted). This standard requires conduct "worse than even pressure, not matter how bad[,] because undue influence is tantamount to a species of cheating." *New*, 2025 WL 2783011, at *10, 2025 U.S. Dist. LEXIS 193462, at *27 (quoting *Lan v. AOL Time Warner, Inc.*, No. 11-cv-2870, 2012 WL 13388978, at *6, 2012 U.S. Dist. LEXIS 187899, at *19 (S.D.N.Y. Aug. 13, 2012), *report and recommendation adopted*, No. 11-cv-2870, 2013 WL 1820289, 2013 U.S. Dist. LEXIS 61574 (S.D.N.Y. Apr. 30, 2013). Even considering the facts in Plaintiff's declaration, they do not appear to rise to the high bar required for establishing duress by undue influence.

containing an arbitration clause due to lack of mental capacity. *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (holding that the appellant's mental incapacity defense "goes to *both* the entire contract and the specific agreement to arbitrate in the contract. Therefore, [his] claim that he lacked the mental capacity to enter into an enforceable contract placed the 'making' of an agreement to arbitrate at issue under § 4 of the FAA".). The Supreme Court has not yet addressed this issue. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1. In any event, given the absence of admissible evidence and lack of briefing on the applicable law, the Court is unable to address this issue.

## VI.   CONCLUSION

For all of the foregoing reasons, the Court finds that the issues presented by Defendant's motion have not been adequately briefed for the Court to rule. It is therefore hereby

**ORDERED** that Defendants' motion to dismiss and compel arbitration (Dkt. No. 12) is **DENIED**, without prejudice; and it is further

**ORDERED** that any renewed motion to dismiss and compel arbitration must be filed within thirty days from the date of this Order.

**IT IS SO ORDERED.**

Dated: February 26, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

17